UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMERON COMPTON,<br>Plaintiff,<br>v.<br>SONY ENTERTAINMENT INTERACTIVE LLC and EPIC GAMES, INC.,<br>Defendants. | No. 1:26-cv-04076-KES-EGC<br>ORDER GRANTING DEFENDANT EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION AND STAYING ACTION PENDING COMPLETION OF ARBITRATION<br>(Doc. 34) |

Defendant Epic Games, Inc. ("Epic") moves for an order compelling plaintiff Kameron Compton's claims to arbitration. Doc. 34. Compton does not oppose the motion. For the reasons set forth herein, the unopposed motion is granted, and this action is stayed with respect to Epic.

## I. BACKGROUND

Compton alleges that he suffers from a severe and injurious addiction to video games, including Fortnite. Doc. 1 ("Compl.") at 40–41.[1] He has sued Epic, the developer of Fortnite, alleging that it intentionally made the game addictive. *Id.* at 5–6, 25. Compton claims various forms of products liability, negligence, misrepresentation, fraud, and violation of California's unfair competition law. *Id.* at 42–69.

[1] This Order cites to the complaint's page numbers rather than paragraph numbers because the paragraph numbers restart halfway through the complaint. *See* Compl. at 40.

Epic asserts that Compton agreed to arbitrate any legal claims regarding Epic's products rather than litigate them in court. Doc. 34 9:6–13. Specifically, Compton created the first account he used to play Fortnite on November 1, 2024. Doc. 34-1 ("Shaw Dec.") ¶ 56. Before he could begin playing under this account, Compton encountered the Fortnite End User License Agreement ("EULA") as a box of scrollable text followed by buttons to "accept" or "decline" the agreement. Doc. 34-2 at 55. The EULA included multiple provisions indicating that the user "agree[d] to resolve all disputes between us in individual arbitration (not in court)." Shaw Dec. ¶¶ 36–38.[2] Compton created the second account he used to play Fortnite on November 6, 2025. *Id*. ¶ 56. Compton accepted the EULA. *Id*. ¶ 60. He again encountered the EULA and accepted its arbitration provisions. *Id*. ¶ 64.

Epic replaced the EULA with Terms of Service ("TOS") later that year, which included language indicating that "unresolved Disputes will be settled by Binding Individual Arbitration conducted by National Arbitration and Mediation." *Id*. ¶ 45. The TOS defined dispute as "any dispute, claim, or controversy . . . whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, that relates to any Licensed Product or the Licensed Products generally, your use or attempted use of a Licensed Product, or these Terms, including the validity, enforceability, or scope of this agreement to arbitrate or any portion of it." *Id*. ¶ 44. Compton accepted the TOS on January 5, 2026. *Id*. ¶ 66.

Both the EULA and TOS gave users the option to opt-out of the arbitration provision by sending written notice to Epic within 30 days. *Id*. ¶¶ 48–49. Compton did not do so. *Id*. ¶ 69.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9

[2] Under the EULA, "dispute" is defined as "any dispute, claim, or controversy . . . between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally." *Id*. ¶ 38. The EULA states that it includes disputes "based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory." *Id*.

U.S.C. § 2). "As [the Supreme Court has] interpreted it, [section 2 of the FAA] contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to 'any contract.'" *Id.* at 650 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–340 (2011)).

A party seeking to enforce an arbitration agreement may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. In ruling on a motion to compel arbitration, a court's role is "limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

## III. DISCUSSION

The court has discretion to grant an unopposed motion. *See Gwaduri v. I.N.S.*, 362 F.3d 1144, 1146 (9th Cir. 2004); *accord Sweegen, Inc. v. Manus Bio Inc.*, No. 8:24-CV-01757-JVS-DFM, 2026 WL 2678667, at *3 (C.D. Cal. Sept. 11, 2026). Here, Epic represents that Compton's counsel informed Epic that Compton does not oppose Epic's motion. Doc. 34 at 2:20–23. And Compton has not filed any opposition to the motion. The motion may be granted on this ground alone.

Further, a preponderance of the evidence indicates that a valid agreement to arbitrate exists. Epic has established via a declaration and documentation—and Compton does not contest—that Compton entered into agreements to arbitrate disputes regarding Epic's products.[3]

[3] Epic suggests that Compton "may" have been a minor when he entered the agreement to arbitrate for the first time, but that he was an adult when he reaffirmed the agreement two more times. Doc. 34 22:17–21. If Compton reaffirmed the arbitration agreement after becoming an adult that could establish his ratification of the agreement. *See Coughenour v. Del Taco, LLC*, 271 Cal. Rptr. 3d 602, 608 (Cal. Ct. App. 2020). The court need not further consider this issue, as Compton has not opposed arbitration or asserted that he did not validly enter into the arbitration

*See generally* Shaw Dec.; Doc. 34-2 at 2–29 (TOS); Doc. 34-3 at 8–27 (EULA). And those agreements arguably encompass the present litigation. *See* Shaw Dec. ¶ 44; *see also id*. ¶ 38.

As the court grants Epic's motion to compel arbitration, it also grants Epic's request to stay the case against Epic. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). It need not reach Epic's alternative argument that any non-arbitrable claims be transferred to the Eastern District of North Carolina. Doc. 34 at 24–26.

## IV. CONCLUSION

Accordingly:

1. Epic's motion to compel arbitration, Doc. 34, is granted;
2. Compton's claims against Epic are stayed pending arbitration proceedings; and
3. Within fourteen (14) days of the issuance of the arbitrator's decision, the parties shall notify the Court that arbitration proceedings have concluded.

IT IS SO ORDERED.

Dated: October 22, 2026

UNITED STATES DISTRICT JUDGE

agreement.